IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JSR MICRO, INC., | No. C-09-03044 PJH (EDL) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| QBE INSURANCE CORP., et al., | |
| Defendants. | |

This case concerns an insurance coverage dispute. Plaintiff JSR Micro produces chemicals used in the manufacture of semi-conductors, and sold specialized products to Qimonda on a consignment basis. Marsh, a commercial insurance broker, negotiated a trade credit insurance policy for Plaintiff with Defendant QBE Insurance Corporation. The policy included a limit of $4.5 million for sales to Qimonda specifically. Under certain conditions, the policy obligated Defendant to pay the insured a percentage of an insured loss in the case of insolvency within sixty days after Defendant received satisfactory proof of loss. See Declaration of Patrice Harper Ex. B at 3. The policy also originally contained an exclusion for consignment sales, that was amended by Endorsement 15 ("Consignment Stock Inclusion") to include coverage for consignment sales under certain circumstances. See Harper Decl. Ex. B at 6, Endorsement 15.

In 2009, Qimonda filed for bankruptcy. On March 17, 2009, Plaintiff tendered its proof of loss to Defendant. On April 29, 2009, Defendant informed Plaintiff that the initial review of the claim was underway, and that an independent adjuster had been appointed. On July 7, 2009, Plaintiff filed this lawsuit against Defendant and the independent adjuster on the grounds that Defendant's failure to pay the claim was a breach of the policy's promise of payment and a violation of state law.

On October 22, 2009, Judge Hamilton opened discovery, except discovery solely directed at the bad faith issue. On November 19, 2009, Plaintiff served a deposition notice on Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6) that contained nineteen topics. Defendant designated multiple witnesses on each topics, and refused to designate witnesses for three topics that Defendant believed were beyond the scope of discovery as limited by Judge Hamilton. Subsequently, Plaintiff took several depositions of Rule 30(b)(6) witnesses.

On February 23, 2010, Plaintiff filed this motion to compel, arguing that Defendant's witnesses were not adequately prepared and that Defendant had obstructed the depositions. The Court held a hearing on March 30, 2010. As stated at the hearing and in this Order, Plaintiff's motion to compel is granted.

**Discussion**

**A.      Plaintiff's Motion to Compel**

**1.      Topics 7, 10 and 17**

Defendant did not designate witnesses for these three topics on the ground that the topics related only to the bad faith issue:

> Topic 7:  Any marketing, selling, advertising or other representations made by you with respect to trade credit insurance policies.
>
> Topic 10:  Any and all claims under trade credit insurance policies other than the policy.
>
> Topic 17:  Any claims that you did not pay on the basis that the insured did not satisfy all conditions of a policy.

See Harper Decl. Ex. P.  In its briefs and at the hearing, Plaintiff stated that the main issue on which Plaintiff sought discovery pursuant to these topics was how Defendant interpreted the term "satisfactory proof of debt," and what evidence Defendant accepted in the past for that proof. Plaintiff also noted that other issues for discovery are the meaning of the term "notifiable event" in the policy, and Endorsement number 15 regarding consignment. Defendant opposed this discovery on the ground that Plaintiff was seeking discovery on the issue of bad faith, contrary to Judge Hamilton's order limiting discovery to the contract claim at this stage. However, evidence of an insurer's representations about or interpretations of a policy term is generally discoverable as relevant to interpretation of the contract language, regardless of any question of bad faith. See, e.g.,

2

Kavruck v. Blue Cross of Cal, 108 Cal.App.4th 773, 782-83 (2003) (permitting discovery of extrinsic evidence regarding ambiguous term); Glenfed Dev. Corp. v. Superior Court, 53 Cal.App.4th 1113, 1118-19 (1997) (claims manual was discoverable as extrinsic evidence of insurer's expectations may be relevant at trial). Accordingly, Plaintiff is entitled to discovery focused on the three relevant issues described above.

Defendant has not contended nor made a showing that discovery on these topics would be unduly burdensome if the topics are limited to the three issues described above. Defendant notes that it offered to provide witnesses in response to these topics for policies that it considered sufficiently similar to Plaintiff's policy, which at the hearing it conceded were vanishingly few, if any, in its own view. Plaintiff, however, should not have to rely on Defendant's determination of "sufficiently similar," particularly in light of Defendant's obstructive discovery tactics in this case to date, as described more fully below. Further, Defendant has not made any showing that under the circumstances of this case, discovery of marketing materials would be improper.

As stated at the hearing, Plaintiff is entitled to explore through discovery facts relevant to its own non-frivolous theories regarding the meaning of contractual terms, even if Defendant disagrees with Plaintiff's theories on the merits. See Employers Reinsurance Co. v. Superior Court, 161 Cal.App. 4th 906, 919-920 (2008) ("Extrinsic evidence can be offered ... to expose a latent ambiguity. Such evidence is admissible when 'relevant to prove a meaning to which the language of the instrument is reasonable susceptible'"); see also London Market Insurers v. Superior Court, 146 Cal.App. 4th 648, 656 (2007) ("In determining if a provision is ambiguous, we consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation"). Although discovery regarding the meaning of contractual terms may overlap with bad faith issues, Judge Hamilton prohibited discovery on the "*purely* bad faith issue." See Oct. 22, 2009 Minute Order, docket no. 32 (emphasis added). Topics 7, 10 and 17, as limited by the Court at the hearing to the issues of satisfactory proof of debt, notifiable event and Endorsement 15, are relevant to contract interpretation and are, therefore, proper avenues for discovery. Accordingly, as ordered at the hearing, Plaintiff is entitled to discovery on topics 7, 10 and 17 as narrowed above with regard to the policies that Defendant issued in the United States, which Defendant stated at the hearing

3

1 number only approximately 125 in total, including but not limited to those that contain Endorsement
2 number 15.

### 2. Witness designations

Plaintiff argues that Defendant designated an unreasonable number of witnesses in response to the Rule 30(b)(6) notice, and that those witnesses were unprepared. Plaintiff's arguments are well-taken. The Court agrees that under the unusual circumstances of this case, including the deposition misconduct described below, the number of witnesses that Defendant vaguely proffered for each topic was excessive. For example, according to Defendant's own Table of Testimony by QBE's 30(b)(6) Witnesses by Topic (see Declaration of Joanne Frasca Ex. B), seven witnesses testified as to topic 5: "The Qimonda claim, including any investigation of that claim and your response to the Qimonda claim," and topic 14: "Your relationship with QBE Australia, including communications between you and QBE Australia relating to the policy of the Qimonda claim." See Frasca Decl. Ex. B at 2. Six witnesses testified on each of five topics, including: (1) "Any claim tendered to you by or on behalf of JSR (topic 4);" and (2) "All information that you relied on in forming a coverage position with regard to the Qimonda claim (topic 6)." See id.

Furthermore, Defendant's witnesses were unprepared. For example, Mr. Rodriguez, a specialty claims officer for QBE Speciality Insurance, was designated to testify as to topics 14 ("Your relationship with QBE Australia including communications between you and QBE Australia relating to the policy or the Qimonda claim") and 15 ("Your relationship with QBE Group, including communications between you and QBE Group relating to the policy or the Qimonda claim"). When Rodriguez was asked whether the QBE Australian unit was part of the QBE Insurance Corporation, he responded that: "I'm not exactly familiar with the corporate designations or boundaries. I just know them as the QBE Australia division, but I don't know corporately how QBE is formally structured from a regulatory or business standpoint." See Harper Decl. Ex. S at 85. He was then asked: "Have you reviewed any documents to become knowledgeable about the relationship between your unit and QBE Australia?" He answered: "No." Id. He answered the same with respect to whether he had reviewed documents to become familiar with the relationship with QBE Group. Id. Thus, the record reflects that Rodriguez was unprepared to testify on the

4

1   topics for which he had been designated.

2   As another example, Mr. Ashby, QBE's senior vice president practice leader for credit and
3   surety, was designated to testify as to seven topics, including topics 14 and 15, yet he was
4   unprepared. Yet when he was asked in his deposition whether he had seen the deposition notice, and
5   he answered that he did not recall. See Harper Decl. Ex. T at 6. He was also asked: "So is it
6   accurate to say that other than meeting with your counsel on Tuesday, you haven't done anything to
7   prepare to testify on behalf of QBE today?" Ashby answered: "That's accurate, yes." See id. at 13.
8   When asked what was required to file a claim under the policy issued to Plaintiff, Ashby answered
9   that he did not recall the full details of what was required. See id. at 175. He did not know the
10  effective date of Plaintiff's policy (id. at 177), even though he was designated to testify about
11  Plaintiff's claim and communications about Defendant's response to the claim. See id. Ex. P at
12  Topics 4, 5, 12, 13. Further, when asked about which QBE entity another employee worked for,
13  Ashby testified that: "To be honest, I don't know who I work for." See Ashby Depo. at 37. In
14  addition, Ashby testified that he was not familiar with the structure of the trade credit claims
15  department (id. at 21-22); he was not sure of the legal relationship between the various entities in
16  QBE Americas and QBE Australia (id. at 27-28); and he was not sure whether QBE Reinsurance is a
17  subsidiary of any QBE entity (id. at 30).

18  With respect to topics 14 and 15, Defendant argues that the term "relationship" was too
19  ambiguous and that therefore, Defendant could not make informed witness designations. Plaintiff
20  explained that it sought testimony about the legal relationship between the entities, a topic for which
21  Defendant's witnesses were not prepared. Defendant argues that it could not know that
22  "relationship" included "legal relationship." While Defendant may have been uncertain to what
23  extent the topic called for information about the relationship beyond communications between the
24  two entities, it should have met and conferred with Plaintiff to clarify the meaning and was not
25  entitled to unilaterally assume a narrow interpretation. See The Sedona Conference Cooperation
26  Proclamation, available at http://www.thesedonaconference.org/content/
27  tsc_cooperation_proclamation. Although the parties should have been able to resolve this issue
28  without the Court's intervention, the Court clarifies that Plaintiff is entitled to discovery on the issue

5

of the relationship, including the legal relationship, between the various entities of QBE Insurance, both from witnesses who are prepared and relevant documents. Further, in light of the excessive witness designations and the fact that witnesses were unprepared, Defendant is limited to three Rule 30(b)(6) witnesses per topic absent a showing of good cause.

### 3. Designations after depositions

On November 18, 2009, Plaintiff noticed the individual depositions of Wayne Bayer (vice-president at QBE) and Anna Mavro (Assistant vice-president at QBE) for December 9 and 10, 2009. See Harper Decl. Ex. I, J (depositions taken on December 8 and 9, 2009). On November 19, 2009, Plaintiff noticed the Rule 30(b)(6) deposition of Defendant that is the subject of this motion. See Harper Decl. Ex. K.

Plaintiff argues that during Bayer's deposition, Defendant's counsel unilaterally and belatedly announced that Bayer and Mavro were also Rule 30(b)(6) witnesses and would testify in that capacity:

> Defendant's counsel: . . . He [Bayer] has been proffered as a percipient witness and also, to some extent, as a 30(b)(6) designation.
> Plaintiff's counsel: That is not true.
> Defendant's counsel: I informed Patrice Harper last week that both Anna Mavro and Mr. Bayer -- I gave her specific categories over the phone of your 30(b)(6) designation that pertained to these two witnesses. She asked me and I gave them. So if you would like to take a break and call her and ask her, I know she is a truthful person. I'm sure she would tell you that.
> Plaintiff's counsel: JSR does not believe this is a 30(b)(6) witness or a 30(b)(6) deposition, nor is tomorrow. This witness has not been designated as such. And this deposition is not -- this deposition of Mr. Bayer is a percipient witness and no more.

See Bayer Depo at 80-81; see also Frasca Decl. ¶ 22 (stating that Defendant's counsel called Plaintiff's counsel on December 2, 2009 and told her the topics for which Bayer and Mavro were designated). Defendant's counsel states that she told Plaintiff's counsel "that QBE expected Plaintiff's counsel to depose Ms. Mavro and Mr. Bayer on these identified 30(b)(6) topics during the next week's deposition." Frasca Decl. ¶ 22. Plaintiff acknowledges that on December 2, 2009, Defendant indicated that Mavro "may" have knowledge about some of the topics, but argues that Defendant did not actually designate Mavro or Bayer as Rule 30(b)(6) witnesses at that time. See Harper Decl. ¶ 10. On December 30, 2009, Defendant sent a letter formally designating witnesses for the 30(b)(6) deposition, including Bayer and Mavro, who were designated as to thirteen of the

1 nineteen topics. See Harper Decl. Ex. P. The Court agrees with Plaintiff that Defendant did not
2 timely designate these individuals as Rule 30(b)(6) witnesses.

3 There has been no showing that Plaintiff deposed Bayer and Mavro as Rule 30(b)(6)
4 witnesses. Defendant argues, however, that for example, Bayer testified about Plaintiff's policy,
5 which is topic 1 of the Rule 30(b)(6) notice. See Bayer Depo. at 108-113. A review of Bayer's
6 testimony, however, shows that although he testified about the policy, Plaintiff did not ask him for
7 Defendant's position on the policy, or whether he knew he was testifying as a Rule 30(b)(6) witness.
8 In fact, during Bayer's deposition, Defendant's counsel clarified that the questions about Plaintiff's
9 policy were being asked in Bayer's capacity as a percipient witness, and there was no mention of the
10 testimony as being pursuant to Rule 30(b)(6). See Bayer Depo. at 128. Defendant has made no
11 showing that Bayer's or Mavro's testimony was given on behalf of Defendant, nor has Defendant
12 provided any authority for retroactive designation of these percipient witnesses as Rule 30(b)(6)
13 witnesses under the circumstances of this case.

**4. John Alder**

John Alder, the independent loss adjuster assigned by QBE to evaluate Plaintiff's claim, was deposed on January 14, 2010. Defendant had designated him on eight of the nineteen topics in the Rule 30(b)(6) notice. See Harper Decl. Ex. P. Plaintiff argues that Alder failed to testify as a Rule 30(b)(6) witness:

> Q: You realize you're here today to testify on behalf of QBE corporation as well as on your individual capacity?
> A: I don't know. I don't -- *I don't think I'm testifying on behalf of QBE*. I'm testifying as their loss adjuster.
> Q: You don't have an understanding that you're here to testify today as a corporate representative of QBE Insurance Company?
> A: No, I'm here to testify as a -- loss adjuster.
> Q: You're here to testify as John Alder?
> A: Yes.
>
> \*\*\*
>
> Q: Do you understand that you're being presented to testify pursuant to this deposition notice [the 30(b)(6) notice]?
> A: Yes.
> Q: You do?
> A: Well, I assume so. I mean Garry Fisher [Defendant's counsel] told me on an email that they would take my deposition in Australia. So that's all I know. I've never seen this deposition notice, even in these -- in the last two days I never bothered to read it. So I haven't ever read it.

7

> Q: Have you ever seen the topics for examination that appear on the second and third pages of exhibit 54?
> A: I'm looking at them now. I'm looking at them.
> Q: Have you ever seen those topics before?
> A: No.
> Q: Have you ever discussed any of these topics with anyone before?
> A: No.

Alder Depo. at 132, 136-37 (emphasis added). This line of questioning also concluded with an improper instruction not to answer:

> Q: Are you going to instruct him not to answer --
> A [Defendant's counsel]: Yes, I am.
> Q: -- questions about the deposition notice?
> A [Defendant's counsel]: Yes, I am.

Alder Depo. at 132, 136-37, 138-39.

Defendant argues that Alder was simply confused by the questions and that he thought he was being asked whether he was a QBE employee (see Frasca Decl. ¶ 57), and that Alder will correct the transcript to reflect that he did not understand the question. It was not until one month after the deposition, on February 18, 2010, that Defendant's counsel gave this post hoc explanation to Plaintiff's counsel, and offered to stipulate that Defendant would be bound by Alder's testimony. Id. At the deposition itself, Defendant made no such designation. Plaintiff reasonably refused to stipulate on the grounds that the deposition was "fundamentally affected by his declination to testify as and for QBE." See Pl.'s Reply at 12.

The record reflects that Alder was unprepared for his deposition, and that he refused to testify as a Rule 30(b)(6) witness for QBE. Defendant's counsel was obligated to prepare Alder; instead, counsel did not even apprise the witness of the deposition topics prior to his deposition. Defendant's agreement to retroactively designate Alder's testimony as Rule 30(b)(6) testimony comes too late. Accordingly, Defendant shall adequately prepare Alder as a Rule 30(b)(6) witness, and Plaintiff may depose him again in that capacity.

### 5. Edward Ashby

Edward Ashby, who is the head of the Trade Credit group for the QBE entity that issued Plaintiff's policy, was deposed in January 2010. Plaintiff argues that it requires four more hours to depose Ashby because documents obtained by Plaintiff lead Plaintiff to believe that Ashby has more knowledge than other witnesses, and because much of the deposition was spent finding out that

8

Ashby failed to prepare for his deposition.[1] Defendant argues that Plaintiff's counsel is not entitled to additional time because counsel wasted time at Ashby's deposition by "ignoring the topics as to which he was knowledgeable and had been designated and devoting substantial time to asking questions regarding what legal entity owned other legal entities or what was the name of the corporation that wrote his paycheck." Def.'s Opp. at 11.

As described above, however, Plaintiff is entitled to testimony from Defendant's Rule 30(b)(6) witnesses regarding the legal relationship among the QBE entities. Thus, that line of questioning was appropriate. Further, Plaintiff's counsel asked only five brief questions regarding the entity on Ashby's paycheck, which does not constitute a waste of deposition time. See Ashby Depo. 52:3-15.

Defendant also argues that during the deposition, Plaintiff's counsel "abruptly announced" in the "mid-afternoon" that he was stopping the deposition to catch a flight back to San Francisco. See Def.'s Opp. at 12. However, a review of the transcript does not bear this out. At about 4:30 on the day of the deposition, Plaintiff's counsel stated that he had to adjourn the deposition in order to catch his flight, and that the deposition would resume at a later date. See Ashby Depo. at 289. Defendant's counsel would not agree to an adjournment, stating that Ashby had cleared his calendar to have the deposition taken that day. Id. However, on the previous day, during another deposition, Plaintiff's counsel had told Defendant's counsel that Ashby's deposition would have to end at 5:00 to permit counsel to catch his flight. See Goodman Decl. ¶ 9. In order to accommodate the 5:00 deadline, all parties had agreed to begin the deposition at 9:00 a.m. instead of 9:30 a.m. Id. at ¶ 10. Even so, Ashby and counsel arrived at 9:15. Id. at ¶ 11.

Plaintiff is entitled to additional time to depose this key witness. There has been no showing that Plaintiff's counsel wasted time at the deposition. Plaintiff may depose Ashby for an additional four hours and may use the time for questioning as Plaintiff sees fit.

**B.   Defendant's counsel's conduct**

As stated at the hearing, the Court is troubled by Defendant's counsel's conduct during

---

[1] The Court has reviewed Plaintiff's questioning and does not conclude that it was unduly lengthy.

9

depositions and in writing. The record is replete with examples; the Court sets forth only a few representative ones here. Defendant's counsel is cautioned to cease engaging in the following types of conduct in any aspect of this case.

For example, in an email from Defendant's counsel to Plaintiff's counsel dated January 1, 2010, Defendant's counsel described an earlier email from Plaintiff's counsel as "silly," and instructed opposing counsel to "get a life." See Harper Decl. Ex. R. In another email from Defendant's counsel to Plaintiff's counsel dated January 8, 2010, Defendant's counsel described an earlier letter from Plaintiff's counsel as an "idiotic and contrived attempt to create phony issues obviously intended to provide Mr. Goodman with an excuse not to come to Australia." See Harper Decl. Ex. V. Further, in another January 1, 2010 email from Defendant's counsel to Plaintiff's counsel, Defendant's counsel stated:

> As to the 30b6, your semantic games are just that. JSR listed topics for examination in its 30b6 notice. In response, we have designated the specific witnesses that will testify for QBE on each of those topics. End of story. There is no ambiguity. Those are the designated witnesses as set forth in my December 30 letter. Depose them or not on the topics as to which their respective names are listed. Again the choice is yours. If you refuse, you will have waived your rights. Period.

Harper Decl. Ex. R. This rude and unprofessional language is inappropriate, and is especially noteworthy in that it was conveyed in writing, albeit via email, a medium that at least provides the author an opportunity to reflect on the contents and exercise self-restraint before pressing the "send" button.

Defendant's counsel's conduct during depositions was similarly inappropriate. In addition to repeated improper instructions not to answer that Defendant's counsel made in the portion of the Alder deposition quoted above (see Alder Depo. at 138-39), there are many other examples where Defendant's counsel consistently made inappropriate speaking objections, gave improper instructions not to answer, and generally acted in an unprofessional manner. In both Defendant's brief in opposition to Plaintiff's motion to compel and at the hearing, Defendant's counsel sought to explain his conduct as a reaction to his frustration with Plaintiff's counsel's allegedly improper discovery conduct. However, even if Plaintiff's counsel has engaged in such conduct (an issue that is not before the Court on this motion by Plaintiff to compel, but which this motion and the accompanying deposition transcripts reviewed by the Court to date have not seemed to

demonstrate), simply put, two wrongs do not make a right. See Ethicon Endo-Surgery v. United States Surgical Corp., 160 F.R.D. 98, 99 (S.D. Ohio 1995) ("As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition.  A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent.  In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom."); In re Stratosphere Corp. Securities Litig., 182 F.R.D. 614, 619 (D. Nev. 1998) ("However, counsel should avoid the prohibited practice of engaging in so-called Rambo tactics where counsel attacks or objects to every question posed, thus interfering with, or even preventing, the elicitation of any meaningful testimony and disrupting the orderly flow of the deposition."); see also Civil L.R. 11-4(a)(4) ("Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must: . . . (4) Practice with the honesty, care and decorum required for the fair and efficient administration of justice.").  Further, Federal Rule of Civil Procedure 30 is clear regarding objections during depositions:

> An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. *An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).*

Fed. R. Civ. P. 30(c)(2) (emphasis added).  Counsel's conduct repeatedly and clearly violated Rule 30(c)(2).

For example, during Kris Cunningham's deposition taken pursuant to Plaintiff's Rule 30(b)(6) deposition notice, the deponent, who was a senior claims assessor at QBE, was asked whether he spoke with anyone in preparation for his deposition and counsel improperly objected:

> Q: Did you talk to anybody in preparation for your deposition today?
> ***
> A: My immediate manager, David Brown.
> Q: Did you talk to Mr. Brown about the subject matter of your deposition?
> A: No.
> Defendant's counsel: I'm going to object to that question on the grounds that it's vague and ambiguous.  He doesn't know what the subject matter of the deposition is going to be other than by speculating.  You can ask him what he talked about.
> Plaintiff's counsel: I just did.

Cunningham Depo. 15-16.  Defendant's counsel's speaking objection was not only improper, but it

11

also reflected a misunderstanding or mischaracterization of the question asked and ignored the fact that the Rule 30(b)(6) deposition expressly provided notice of the topics for the deposition.

Further, Defendant's counsel made improper objections and instructions not to answer in response to permissible questions by Plaintiff's counsel to Cunningham:

> Q: Did you meet with your counsel?
> Defendant's counsel: Don't answer it.
> ***
> Q: When was the first time you met Mr. Fisher [Defendant's counsel] in person?
> Defendant's counsel: Don't answer it.  I'm not a witness in this case.
> ***
> Q: Do you understand that you're here today to talk about — or to testify on behalf of QBE Insurance Corporation regarding the JSR policy?
> A: I understand I'm here to talk about the claim file that JSR had lodged against QBE relating to the debt that they've claimed owing by Qimonda Richmond.
> Q: Are you prepared today to testify about the JSR policy on behalf of QBE Corporation?
> A: Objection.  Vague and ambiguous.  What is it you want him to testify about?  The policy is a big policy.
> Q: It's in our deposition notice.
> A: Well, you need to be a little more specific then.
> Q: Do you understand the question Mr. Cunningham?
> A: No, I don't understand the question.
> Q: Do you have knowledge regarding the JSR Micro policy issued by QBE Insurance Corporation?
> Defendant's counsel: He has some knowledge, certainly.
> Q: Are you testifying?  I thought you weren't a witness.
> A: Objection.  Vague, ambiguous and unintelligible.  Overly broad.  Don't answer the question.

Cunningham Depo. 17-19.

Defendant concedes, as it must, that questions like these about when, how long and how many times a witness met with counsel are "technically permissible."  See Def.'s Opp. to Pl.'s Mot. to Compel at 24.  There was simply no basis for Defendant's counsel's instructions not to answer questions regarding whether and when Cunningham met with counsel, particularly when there is no indication that Plaintiff's counsel even came close to intruding on the attorney-client privilege.  Nor are objections of "vague," "overly broad," and the like proper bases for an instruction not to answer, and in any case, these objections as to form were misdirected to straightforward questions such as whether the witness was prepared to address a Rule 30(b)(6) topic.  Further, incredibly, counsel answered a question himself about whether the witness had knowledge regarding the policy at issue.  These objections, instructions not to answer, coaching and testimony by counsel are highly improper.

12

Defendant's counsel's misconduct continued in other depositions. For example, David Brown, who was a claims manager at QBE, was designated as a Rule 30(b)(6) witness for several topics. Defendant's counsel made numerous improper speaking objections, including when Plaintiff's counsel asked Brown if he was prepared to testify on behalf of QBE:

> Q: Are you prepared to testify about all information that QBE relied upon in forming a coverage position with regard to the Qimonda claim?
> A: No.
> Defendant's counsel: Assumes a fact not in evidence that they have a coverage position.
> Q: That's a speaking objection, Mr. Fisher. I'd appreciate --
> Defendant's counsel: *You're damn right it is.*

Brown Depo. 32 (emphasis added). While it is difficult to conceive of any circumstance under which counsel's use of a swearword in defending a deposition would be appropriate, here it was used to support an improper speaking objection. In fact, Defendant's counsel went further and essentially coached Brown to testify that Defendant had not taken a coverage position, while simultaneously making plainly improper instructions not to answer:

> Q: Mr. Brown, are you prepared to testify today about all information that QBE relied on in forming a coverage position with regard to the Qimonda claim?
> A: No.
> Defendant's counsel: *Don't answer the question in the form it's asked.*
> Q: You can answer the question. There's no basis upon which to instruct, Mr. Fisher, and you know that.
> Defendant's counsel: Vague. Ambiguous. You've laid no foundation.
> Q: I understand your objections.
> Defendant's counsel: It assumes a fact not in evidence, and I'm not going to let this witness assume that fact. He's not an expert.
> Q: You can answer the question, Mr. Brown.
> Defendant's counsel: No, you can't.
> Q: Are you instructing him not to answer?
> Defendant's counsel: *I am instructing him not to answer unless you can ask the question in the proper manner.*
> Q: The question's fair.
> Defendant's counsel: You're assuming that he's taken a coverage position. Why don't you ask him if he's taken one.
> Q: Are you instructing him not to answer the question as phrased?
> Defendant's counsel: Yes. It's the wrong question, and you've laid no foundation for it.
> Q: That's not a basis upon which to instruct a witness not to answer.
> Defendant's counsel: Well, I'm afraid it is.

Brown Depo. 33-34 (emphasis added). Defendant's counsel was mistaken. Rule 30(c)(2) makes very plain that these objections were not a proper basis for an instruction not to answer. Nor were they stated in a nonargumentative and nonsuggestive manner.

13

In addition, when Plaintiff's counsel asked Brown's about his preparation for the deposition, Defendant's counsel made more improper and rude speaking objections:

> Q: Mr. Brown, are you prepared to testify on behalf of QBE with respect to QBE's knowledge of trade credit insurance policies?
> Defendant's counsel: Objection. Vague and ambiguous in the form it's asked. I have no idea what you mean by knowledge, or the scope of it. This is an entire industry, and we've not designated --
> Q: Mr. Fisher, really, this is really inappropriate coaching of the witness.
> Defendant's counsel: Well, *your questions are so bad I can't help it.*
> Q: Well, try to help yourself.
> Defendant's counsel: Don't answer the question.
> Q: Are you instructing him not to answer the question?
> Defendant's counsel: Yes. *Get on with your questions. Let's get to something useful*.

Brown Depo. 44-45 (emphasis added). Counsel's invective against opposing counsel, such as calling opposing counsel's questions "bad" and implying that the questions are useless, troubles the Court and is more evidence of Defendant's counsel's misconduct.

Later, Plaintiff's counsel asked Brown which QBE employees would have more knowledge than Brown on the issue of the relationship between QBE Insurance Corporation and QBE Australia, yet counsel made improper and ad hominem speaking objections:

> Q: You didn't talk to any of those people to prepare for your deposition today, correct?
> A: No, correct.
> Defendant's counsel: Counsel, *aside from the fact that you're trying to create a fog* which you can use for some other purpose in this litigation with these questions, and/or. . .
> Q: Is that an objection?
> Defendant's counsel:  -- for bad faith purposes --
> Q: Is there any objection in our future -- Mr. Fisher, because this is an inappropriate speaking --
> Defendant's counsel: There's an offer. There's an offer.
> Q: Okay.
> Defendant's counsel: Hear me out.
> Q: What is it?
> Defendant's counsel: *If there's a point to any of this* and there is a stipulation at the end of that point about the relationship between the corporate entities at QBE, I'd be willing to entertain that stipulation *so we don't have to go through this anymore*. And I want that on the record. Let's save time for the judge.

Brown Depo. 47-48 (emphasis added). Plaintiff's counsel also asked Brown about assessment of the Qimonda claim, and Defendant's counsel made several more improper objections and instructions not to answer:

> Q: I understand that, Mr. Brown, but my question is: if you assessed everything else that you wanted to assess and Qimonda had not confirmed the debt that JSR claims it owes, would QBE pay the claim?

14

> Defendant's counsel: You're asking him to speculate.
> A: Mmm. Yeah, I can't answer your question.
> Q: Why not?
> Defendant's counsel: *That's argumentative. Don't answer it.*
> Q: No, it's not argumentative.
> Q: Why can't you answer the question? I'm just trying to get an understanding.
> Defendant's counsel: It's argumentative. Don't answer it.
> A: I'm not answering it.

Brown Depo. 93 (emphasis added). As Defendant's counsel must well know, whether a question is argumentative is not a proper basis on which to instruct a witness not to answer. See Fed. R. Civ. P. 30(c)(2). In any case, the question was not argumentative.

Finally, with respect to Alder's deposition, who was the outside adjuster retained by Defendant to evaluate Plaintiff's claim and was deposed as a Rule 30(b)(6) designee, Defendant's counsel made another frivolous objection:

> Q: Do you know whether as of May 18, QBE was able to determine if JSR's claim was not covered under its insurance policy?
> A: No, they made --
> Defendant's counsel: Hold it. Hold it. Did you know if QBE -- in that form, the question is improper. Object to the form of the question. You are asking what's in QBE's mind.

Alder Depo. 258. This question is precisely the sort of inquiry appropriate for a Rule 30(b)(6) witness. See United States v. Taylor, 166 F.R.D. 356, 361 (M.D. N.C. 1996) ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is 'speaking for the corporation,' . . . . 'Obviously it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation.' The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's 'position' on the topic. *Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions.*") (internal citations omitted) (emphasis added); see also William W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 11.1416 (Rutter Group 2010).

The Court admonishes defense counsel to immediately cease interposing improper objections and improper instructions not to answer, to conduct himself professionally, and to cease making demeaning comments to opposing counsel. As a prophylactic measure, all further conversations

between counsel regarding discovery shall be recorded.

**IT IS SO ORDERED.**

Dated: April 5, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge