IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JSR MICRO, INC., | No. C-09-03044 PJH (EDL) |
|     Plaintiff, | **ORDER OF RECUSAL; EXTENDING STAY OF DEPOSITIONS; DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO SHIFT DISCOVERY COSTS** |
| v. | |
| QBE INSURANCE CORP., et al., | |
|     Defendants. | |

    The Court hereby recuses itself. The Court does not make this decision lightly. However, Defendants have made serious allegations that the Court is biased against them. Therefore, even though Defendants' allegations of bias are misguided, in the interest of caution and to avoid even the appearance of bias, the Court has decided to take this unusual step. The history leading to the Court's recusal is as follows.

    On January 15, 2010, this case was referred to this Court for all discovery purposes. Since that time, the Court has held six hearings, and issued ten discovery orders, including ruling on a motion for sanctions and a motion for contempt citation brought by Plaintiff, as well as two orders regarding scheduling. The Court granted Plaintiff's Motion for Sanctions against Defendants, but denied Plaintiff's Motion for Contempt Citation despite Defendants' noncompliance with the Court's June 14, 2010 discovery order. On several occasions, the Court has admonished both sides for their inability to work cooperatively in discovery, which resulted in unnecessary judicial intervention, as well as unwarranted escalation of disputes, including Plaintiff's request for a contempt citation.

1   Against that backdrop, Defendants' counsel has accused the Court on at least two occasions,

2   once in open court and once in writing, of bias in favor of Plaintiff.  Specifically, on July 19, 2010,

3   the following exchange occurred during a discovery conference:

>   THE COURT: What I'm trying to say is, I think I already ruled that it was relevant to contract interpretation. Didn't I? Was that my ruling? I know you disagreed with it, but I found --
>   MR. FISHER: That's not even where I'm going, but I've never had a chance to finish a sentence in this courtroom, with all due respect.
>   THE COURT: With --
>   MR. FISHER: I don't know why there's a bias here.
>   THE COURT: Mr. Fisher, there is not.
>   MR. FISHER: But there evidently is one.
>   THE COURT: I'm sorry you feel that way.
>   MR. FISHER: Because the Court never seems to want hear what we have to say.
>   THE COURT: Mr. Fisher, I'm sorry you feel that way.  I can assure you there is no bias. Why don't you go ahead and make your point. I'm just asking you not to revisit, because I think this is the third or fourth hearing I've had, and I've made certain rulings and I don't want to go back and reconsider them.
>   MR. FISHER: Reason the cart is before the horse, your Honor, is that we are about to file a counterclaim which shows -- which trumps these issues anyway. There never was coverage. We've now taken the deposition of JSR's broker. And there was evidently a communication problem between the broker and JSR, but the testimony is none of that information ever came to the insurance company.
>   THE COURT: Okay. Is the counterclaim now pending?
>   MR. FISHER: It's about to be.
>   THE COURT: But it's not filed yet.
>   MR. FISHER: It's not yet.
>   THE COURT: So at least as of today, I've got to take the pleadings as I find them.
>   MR. FISHER: That's correct. The only thing I'm pointing out to the Court is the enormous expense to which our client and probably JSR has been put.
>   THE COURT: And you've made a very serious accusation that I'm biased, and yet I've previously acknowledged a concern with the enormous expense, and I've tried to come up with some compromise that would be less expensive and yet still allow the information that seemed to be relevant to contract determination, haven't I? Is that so? Haven't I expressed concern about the expenses.
>   MR. FISHER: I think what Miss Frasca is telling you is she has proposed something that is less expensive. No one else has proposed anything that is not inordinately expensive.
>   THE COURT: And -- Miss Frasca?
>   MS. FRASCA: May I answer your Honor's question?
>   THE COURT: Is it your belief that I am biased against you as well? For your client?
>   MS. FRASCA: I believe that not all our arguments have been given the full hearing that we would have wanted, your Honor.
>   THE COURT: I am hearing you now.

Transcript of July 19, 2010 Discovery Conference at 10-12.  As stated at the July 19, 2010

conference, the Court has tried on several occasions to suggest compromises to the parties that are

fair to both sides and achieve proportionality in discovery as required by Federal Rule of Civil

Procedure 26(b)(2)(c)(iii), unfortunately, to little avail.  Moreover, during the course of this case,

2

1  Defendants have exhibited a tendency to re-argue issues that have previously been decided, such as
2  the relevance of non-U.S. trade credit insurance policies that the Court ordered produced in
3  discovery, without seeking formal reconsideration as required under Civil Local Rule 7-9, which
4  inhibits moving forward.

More recently, in Defendants' September 27, 2010 Opposition to Plaintiff's September 24, 2010 Motion for Protective Order re: JSR Deposition Notices, Defendants again accused the Court of favoring Plaintiff:

> Once again, the Magistrate Judge has ignored the rules in favor of Plaintiff over the Defendant by allowing consideration of a motion filed so late that Defendant had virtually no chance to consider the motion and no opportunity to respond before the Court ruled in response to the motion on the very day that it was filed by staying the depositions properly noticed and served by Defendant.

Docket No. 227 at 2. Defendants further stated:

> Plaintiff admitted that Defendant's deposition Notices for Inoue and Golden were received and signed for by Squire Sander's receptionist, and JSR's attorneys knew about them the very next day when deposition scheduling was discussed. There is in fact no prejudice whatsoever; however, by virtue of the Magistrate Judge's decision, Plaintiff's counsel is afforded an unfair advantage by proposing something that we couldn't possibly accept, and then used our rejection of the "proposal" to persuade the Court that Defendant should not get to take the depositions at all.

Id. at 3.

The Court gave Defendants leave to file the September 27, 2010 Opposition to Plaintiff's Motion for Protective Order during a recorded telephone discovery conference on September 24, 2010. During that discovery conference, the Court and the parties discussed the Hitoshi Inoue and Shikako Golden depositions that Defendants recently noticed on September 21, 2010 for depositions to take place on October 1, 2010, the last day of fact discovery. Plaintiff sought a protective order against the Inoue and Golden depositions because, among other things, with the October 1, 2010 fact discovery cutoff looming, Defendants unilaterally served those deposition notices without prior consultation with Plaintiff as required by Civil Local Rule 30-1. Plaintiff's Motion for Protective Order sought an expedited ruling on the issue. Given the discreteness of the issue and the impending discovery cutoff and summary judgment dates, the Court agreed that expedited consideration of the motion was appropriate. At the telephone conference, the Court specifically asked Defendants' counsel: "So, are you saying that you want me to rule on this on the oral record

1  today or do you want to have an opportunity on a very shortened briefing schedule to file a written
2  opposition?" Defendants' counsel did not respond clearly one way or the other to the Court's
3  inquiry, but proceeded to argue the merits of allowing the depositions to proceed. In addition to
4  allowing oral argument, the Court permitted Defendants to file a brief in opposition by the close of
5  business on September 27, 2010, and permitted Plaintiff to file a reply by close of business on
6  September 28, 2010.

7  In permitting Defendants to file an opposition to Plaintiff's Motion for Protective Order, the
8  Court specifically directed Defendants, in response to their argument that the notices were timely in
9  relation to the October 1, 2010 discovery cutoff date, to look at relevant caselaw about serving
10 discovery requests before, but close to, the discovery deadline, stating that "even though technically
11 the close of discovery is the cutoff, it's extremely relevant whether it's too late to notice things at the
12 last minute such that they are being taken at the very end of the discovery period." See, e.g., Mori v.
13 Baroni, 2008 WL 2509143, at *3 (E.D. Cal. June 23, 2008) (stating that the plaintiff failed to
14 satisfactorily explain why it initiated deposition discovery only six weeks before the discovery
15 cutoff in a case that was one year and four months old, which it characterized as the "eleventh hour,"
16 and deciding to deny a motion to shorten time to compel compliance with deposition subpoenas
17 without prejudice to renewal if district court extended the deadline); Photomedex v. Irwin, 2007 WL
18 2238359, at *2 (S.D. Cal. Aug. 2, 2007) (denying request to proceed with deposition of witness
19 because the plaintiff did not diligently pursue the scheduling of the deposition where the witness's
20 counsel was first contacted by the plaintiff to obtain a date for deposition approximately seventeen
21 days before the discovery cutoff date, stating that there was no impediment to the plaintiff's ability
22 to schedule the deposition after the court's scheduling order and before the discovery cutoff date);
23 see also In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 320, 327 (N.D. Ill. 2005) ("What would be
24 reasonable even in a late stage of a relatively simple case with few lawyers may take on a very
25 different cast where, as here, the case is exceedingly complex, the depositions are to occur virtually
26 hours before the discovery cut-off, and it was obvious-or at least probable-that the schedules of the
27 deponents and a number of lawyers would be unable to accommodate the belatedly filed notices.").
28 Defendants did not address any authority to this effect in their opposition.

4

Defendants' counsel acknowledged at the discovery conference that "the deposition notices were served as soon as we saw the ruling indicating that the discovery cutoff date would be applicable." Defendants were referring to Judge Hamilton's September 21, 2010 denial of Defendants' September 17, 2010 Administrative Motion to Set a Case Management Conference and Temporarily Stay Discovery. Apparently, Defendants gambled that Judge Hamilton would extend what Defendants had mischaracterized as a "shadow" discovery cutoff date, and lost. At the discovery conference, the Court noted that Judge Hamilton's minute order setting the discovery cutoff date in this case (docket number 109) did not indicate that it was a shadow date as Defendants had represented to this Court. Instead, the discovery cutoff was a firm deadline with no reference to "shadow," whereas other pretrial dates were specifically set as shadow dates. It appears that Defendants' modus operandi in this case has been to conduct discovery as if the October 1, 2010 discovery cutoff date were flexible and not a court-ordered deadline only changeable by further order of the Court, despite Judge Hamilton's minute order and Plaintiff's statements, including in open court, that the discovery cutoff date was not merely aspirational. See Transcript of July 19, 2010 hearing at 31, 46; Transcript of August 25, 2010 hearing at 27.

Following a lengthy discussion about the timing of the depositions, as well as the other ancillary issues, the Court stayed the Inoue and Golden depositions pending a ruling on Plaintiff's Motion for Protective Order after further briefing by both parties. The Court noted that any decision on Plaintiff's Motion for Protective Order would take into account Defendants' admission at the hearing that it failed to comply with Civil Local Rule 30-1, which requires that "before noticing a deposition of a part or witness affiliated with a party, the noticing party must confer about the scheduling of the deposition with opposing counsel . . . ." Contrary to Defendants' written opposition, the Court's decision to stay the depositions did not take into consideration or rely on Plaintiff's proposal to Defendants made prior to the telephone conference that Defendants agree to fly all of its witnesses noticed for deposition by Plaintiff during the week of September 27, 2010 from New York to San Francisco to be deposed. In fact, the Court stated at the September 24, 2010 telephone conference that Plaintiff's proposal "doesn't affect whether I'm going to grant the protective order or not." The Court was mindful that Defendants argued that Plaintiff was willing to

5

double track depositions during that week, and that therefore, Defendants believed that the depositions of Inoue and Golden should go forward. However, the more pertinent question, which the Court raised at the telephone conference, was whether Defendants timely served the deposition notices. When Defendants filed their September 27, 2010 brief, however, instead of addressing any authority for issuing the deposition notices on the eve of the discovery cutoff date or otherwise addressing the merits of the motion or the other substantive issues raised at the September 24, 2010 conference, Defendants instead launched another attack on the Court's neutrality.

Defendants' allegations of bias are without merit. The Court has endeavored to manage discovery in this case in a fair and neutral manner, making numerous attempts to help the parties reach compromises based on proportionality concerns. Nonetheless, in an effort to avoid even the appearance of bias, the Court recuses itself from this case.

In order to give a new judge time to rule on Plaintiff's Motion for Protective Order (docket number 221), the Court extends the stay on the depositions of Hitoshi Inoue and Shikako Golden that was entered during the September 24, 2010 discovery conference. The Court also denies without prejudice Defendants' Motion for Protective Order to Shift Specific Discovery Costs (docket number 182) in light of the Court's recusal, and recommends ruling on any renewed motion at the end of the case because much of the cost sought to be shifted has already been incurred, the proportionality of the discovery will likely be more apparent at that time, and deferring ruling will provide an incentive to both sides to be targeted and efficient during the remainder of this case. See Fed. R. Civ. P. 26(b)(2)(c)(iii).

**IT IS SO ORDERED.**

Dated: October 7, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge